USDS SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: _____

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

QUAHERI REDCROSS,

                  Petitioner,

  -v-

KEVIN KELLER, Acting Superintendent of
Mid-Orange Correctional Facility,

                  Respondent.

Case No. 06-CV-3882 (KMK) (GAY)

ORDER ADOPTING
REPORT & RECOMMENDATION

---

KENNETH M. KARAS, District Judge:

    Quaheri Redcross ("Petitioner"), proceeding pro se, brings this petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. He challenges his conviction, upon a guilty plea, of attempted assault in the first degree. Petitioner, who was sentenced to ten years in prison and five years of post-release supervision, claims his plea was not valid because at the time of his plea he was not informed of the mandatory five years of post-release supervision ("PRS"). The case was referred to Magistrate Judge George A. Yanthis for review, pursuant to 28 U.S.C. § 636(b).[1] On January 23, 2009, Magistrate Judge Yanthis issued a Report and Recommendation ("R&R"), concluding that this Court should deny the Petition in its entirety. For the reasons stated herein, the Court denies Petitioner's claims for habeas relief.

---

[1] The case was initially assigned to Judge Colleen McMahon, who referred the matter to Magistrate Judge Yanthis on June 1, 2006. The case was reassigned to this Court on August 6, 2007.

## I. Background

The Court assumes the Parties' familiarity with the factual and procedural background of this case as it is set forth by Magistrate Judge Yanthis in the R&R. What follows here is a summary.

### A. Conviction and Direct Appeal

On May 30, 2002, in Orange County Court, Petitioner pled guilty, pursuant to a plea agreement, to first-degree attempted assault. (Plea Tr. 9, 11-16, *People v. Redcross*, No. 36/2002 (N.Y. Cty. Ct. May 30, 2002) ("Plea Tr.").)[2] During the plea proceedings, Judge Stewart Rosenwasser informed Petitioner that the maximum sentence would be ten years in prison. (*Id.* at 6.) No mention was made of a mandatory period of post-release supervision that would attach to Petitioner's sentence. Judge Rosenwasser found that Petitioner had "knowingly, intelligently and voluntarily waived [his] rights" and accepted his plea. (*Id.* at 15-16.) On October 11, 2002, Judge Rosenwasser sentenced Petitioner to, inter alia, "a determinate period of incarceration of ten years [to be followed by] five years post-release supervision." (Tr. 14, *People v. Redcross*, No. 36/2002 (N.Y. Cty. Ct. Oct. 11, 2002) ("Sentencing Tr.").)

Petitioner appealed the judgment of conviction and sentence in the Appellate Division of New York Supreme Court. Through counsel, Petitioner argued, inter alia, that "his plea was not voluntarily entered because he was not informed that he would be subject to a mandatory period of post-release supervision." *People v. Redcross*, 787 N.Y.S.2d 374, 375 (App. Div. 2004). On December 20, 2004, the Appellate Division affirmed the judgment of conviction, holding that

---

[2] The trial court advised Petitioner that his admission to attempted assault would also amount to an admission to violating a prior probationary sentence, but that the sentence for the violation (one and one-third to four years) would be concurrent with the sentence for the attempted assault charge. (Plea Tr. 4.)

2

Petitioner's involuntary plea claim was "unpreserved for appellate review since [Petitioner] did not move either to withdraw his plea on this ground or to vacate the judgment of conviction," and "declin[ing] to review it in the exercise of [the court's] interest of justice jurisdiction." *Id.* The Court of Appeals summarily denied Petitioner's request for further review. *See People v. Redcross*, 828 N.E.2d 93, 93 (N.Y. 2005).

### B. Motion to Vacate Sentence

On September 2, 2005, Petitioner moved, pro se, in Orange County Court to vacate his sentence pursuant to CPL § 440.20. (Pet. ¶ 12(a).) Petitioner contended that "[his] sentence was illegally imposed when the court failed to inform him prior to sentence that he would be subject to five years of post-release supervision," and that his "counsel was ineffective for failing to advise [him] that there was a term of post-release supervision." (*Id.* ¶ 12(a)(3).) Judge Rosenwasser denied Petitioner's motion, holding that Petitioner had "raised no fact or allegation that would indicate that the sentence was 'unauthorized, illegally imposed or otherwise invalid as a matter of law,'" and that "the sentence [was] neither harsh [n]or excessive." (Resp't's Mem. of Law & R. of Exs. ("Resp't Mem."), Ex. 8, at 118.) Petitioner did not appeal. (Pet. ¶ 12(c).)

### C. Habeas Petition

On May 22, 2006, Petitioner filed the instant application for habeas relief, arguing that his "plea was not knowingly, intelligently, and voluntarily made because the court failed to inform him during the plea allocution that his sentence to a determinate term of ten years['] imprisonment included an additional five years of post-release supervision in excess of the original plea agreement." (*Id.* ¶ 13 (formatting omitted).)

3

Magistrate Judge Yanthis concluded that Petitioner's claim was procedurally barred, and recommended that the Petition be dismissed. (R&R 7.) In reaching this conclusion, Magistrate Judge Yanthis did not reach the merits of the Petition. Petitioner filed timely objections to the R&R, arguing that Magistrate Judge Yanthis "wrongly concluded that the state appellate court's procedural bar was based on an 'independent and adequate' state law basis sufficient to preclude him from federal habeas relief." (Pet'r's Objections to the Magis.' R&R ("Obj.") 1.)

II. Discussion

A. Standard of Review

1. Review of Magistrate Judge's Report and Recommendation

A district court reviewing a magistrate judge's report and recommendation addressing a dispositive motion "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1); *see also Donahue v. Global Home Loans & Fin., Inc.*, No. 05-CV-8362, 2007 WL 831816, at *1 (S.D.N.Y. Mar. 15, 2007).[3] Under 28 U.S.C. § 636(b)(1) and Federal Rule of Civil Procedure 72(b)(2), parties may submit "specific" and "written" objections to the magistrate judge's report and recommendation. Fed. R. Civ. P. 72(b)(2).

Where a party submits timely objections to a report and recommendation, as Petitioner did here, the district court reviews de novo the parts of the report and recommendation to which the party objected. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(3); *Donahue*, 2007 WL

---

[3] Copies of all unreported decisions will be sent to Petitioner along with this Order. *See Lebron v. Sanders*, 557 F.3d 76, 77 (2d Cir. 2009) (per curiam).

4

831816, at *1.[4] The district court "may adopt those portions of the . . . report [and recommendation] to which no 'specific written objection' is made, as long as the factual and legal bases supporting the findings and conclusions set forth in those sections are not clearly erroneous or contrary to law." *Eisenberg v. New Eng. Motor Freight, Inc.*, 564 F. Supp. 2d 224, 226 (S.D.N.Y. 2008) (quoting Fed. R. Civ. P. 72(b)(2)).

### 2. Review of Petition for Habeas Corpus Relief

Under the Antiterrorism and Effective Death Penalty Act ("AEDPA"), Petitioner is entitled to habeas corpus relief only if he can show that "the state court 'unreasonably' applied law as established by the Supreme Court in ruling on [P]etitioner's claim, or made a decision that was 'contrary to' it." *Cousin v. Bennett*, 511 F.3d 334, 337 (2d Cir. 2008) (quoting 28 U.S.C. § 2254(d)(1)). "While 'the precise method for distinguishing objectively unreasonable decisions from merely erroneous ones' is somewhat unclear, 'it is well-established in th[e Second] Circuit that the objectively unreasonable standard of § 2254(d)(1) means that [P]etitioner must identify some increment of incorrectness beyond error in order to obtain *habeas* relief.'" *Sorto v. Herbert*, 497 F.3d 163, 169 (2d Cir. 2007) (quoting *Torres v. Berbary*, 340 F.3d 63, 69 (2d Cir. 2003)) (emphasis in *Sorto*) (internal quotation marks and brackets omitted). The state court's determination of factual issues is presumed correct, and Petitioner has "the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); *see also Hoi Man Yung v. Walker*, 468 F.3d 169, 176 (2d Cir. 2006).

---

[4] Pleadings submitted by pro se litigants are held to a lesser standard than those drafted by attorneys. *See Fed. Express Corp. v. Holowecki*, 552 U.S. 389, 402 (2008) ("Even in the formal litigation context, *pro se* litigants are held to a lesser pleading standard than other parties." (emphasis in original)). Because Petitioner is proceeding pro se, the Court construes his submissions liberally so as to interpret them to raise the strongest arguments that they suggest. *See Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006).

B. Analysis

### 1. Procedural Default

Because Petitioner has filed timely objections regarding the R&R's recommendation that Petitioner's writ be dismissed for procedural default, this Court has reviewed that section of the R&R de novo.

On direct appeal, the Appellate Division held that Petitioner's involuntary plea claim was "unpreserved for appellate review since [Petitioner] did not move either to withdraw his plea on this ground or to vacate the judgment of conviction," *Redcross*, 787 N.Y.S.2d at 375, and the Court of Appeals denied leave to appeal. From this, Magistrate Judge Yanthis concluded that Petitioner's claim based on the asserted involuntariness of his plea had been procedurally defaulted and, therefore, could not be a proper basis for habeas relief. (R&R 5-6.) Specifically, according to Magistrate Judge Yanthis, "[w]ell settled caselaw mandated" the Appellate Division's holding that Petitioner's challenge to the voluntariness of his plea was unpreserved for appellate review. (*Id.* at 5.)

Petitioner argues that the caselaw did not mandate such a holding: "Inasmuch as Petitioner's claim essentially involves a challe[n]ge to the legality of his sentence, and state court[s] in New York do not bar claims like his, the procedural bar invoked by the Appellate Division on [Petitioner's] appeal is not based on an independent and adequate state law basis." (Obj. 8 (emphasis omitted).) In support of this point, Petitioner cites *People v. Catu*, 825 N.E.2d 1081 (N.Y. 2005), a case post-dating Petitioner's direct appeal, in which the New York Court of Appeals held that the trial court's failure to advise the defendant that he would be subject to the PRS rendered his guilty plea involuntary and required vacatur of the plea. (Obj. 4-6.) Nothing

6

about *Catu*, however, dealt with the procedural bar Petitioner faces here, as the *Catu* defendant had timely objected to his plea in the trial court. *See People v. Catu*, 768 N.Y.S.2d 600, 600 (App. Div. 2003) (affirming Supreme Court's denial of defendant's motion to vacate the judgment on the merits), *rev'd*, 825 N.E.2d 1081 (N.Y. 2005). Therefore, *Catu* does not itself suggest that it is improper for an appellate court to hold that an objection to a plea such as the one at issue here is procedurally barred if not properly raised before the trial court. Thus, the question remains whether the procedural grounds on which the Appellate Division denied Petitioner's initial appeal were adequate to deny the petition.

"Under the independent and adequate state ground doctrine, a federal court sitting in habeas 'will not review a question of federal law decided by a state court if the decision of that court rests on a state law ground that is *independent* of the federal question and *adequate* to support the judgment.'" *Richardson v. Greene*, 497 F.3d 212, 217 (2d Cir. 2007) (quoting *Coleman v. Thompson*, 501 U.S. 722, 729 (1991)) (emphasis in *Richardson*). "Independent and adequate state law grounds preventing federal review include violations of state procedural rules . . . ." *Id.* "'The adequacy of state procedural bars to the assertion of federal questions,' [the Supreme Court] ha[s] recognized, is not within the State's prerogative finally to decide; rather, adequacy 'is itself a federal question.'" *Lee v. Kemna*, 534 U.S. 362, 375 (2002) (quoting *Douglas v. Alabama*, 380 U.S. 415, 422 (1965)) (internal brackets omitted). This principle includes, for example, the adequacy of New York's preservation rule. *See Richardson*, 497 F.3d at 217. "A state preservation rule will be deemed adequate only if it is firmly established and regularly followed by the state." *Id.* at 218 (internal quotation marks and ellipsis omitted); *see also Drake v. Woods*, 547 F. Supp. 2d 253, 261 (S.D.N.Y. 2008) (noting that a procedural bar

7

"must be firmly established and regularly followed by the state" (internal quotation marks omitted)). Adequacy of a state procedural bar must be examined in the context of "the specific circumstances presented in the case, an inquiry that includes an evaluation of the asserted state interest in applying the procedural rule in such circumstances." *Cotto v. Herbert*, 331 F.3d 217, 240 (2d Cir. 2003). One "guidepost[]" for evaluating such a state interest is "whether state caselaw indicated that compliance with the rule was demanded in the specific circumstances presented." *Id.*

In the specific circumstances of this case, the law in New York has evolved since Petitioner's direct appeal, so that it cannot be said that the grounds upon which the Appellate Division relied to dismiss Petitioner's direct appeal are firmly established or regularly followed. Indeed, in *People v. Louree*, 869 N.E.2d 18 (N.Y. 2007), the New York Court of Appeals held that "where a trial judge does not fulfill the obligation to advise a defendant of postrelease supervision during the plea allocution, the defendant may challenge the plea as not knowing, voluntary and intelligent on direct appeal, notwithstanding the absence of a postallocution [sic] motion." 869 N.E.2d at 21. In so holding, the Court of Appeals indicated that it could not "shut [its] eyes to the actual or practical unavailability of either a motion to withdraw a plea under CPL 220.60(3), or a motion to vacate the judgment of conviction under CPL 440.10 in these cases." *Id.* As the Court of Appeals recognized, "a defendant can hardly be expected to move to withdraw his plea on a ground of which he has no knowledge," and the same defendant cannot make a CPL 220.60(3) motion after informed of the post-release supervision at sentencing, because such a motion must be made before sentence. *Id.*

8

Two courts in this district have suggested, though not held, that *Louree* does not have retroactive effect. *See Robles v. Fischer*, No. 05-CV-3232, 2008 WL 627509, at *7 & n.2 (S.D.N.Y. Feb. 22, 2008) (noting that the state procedural ground was established at the time of petitioner's appeal, even if a broad reading of *Louree* would call the rule into doubt), *adopted by* 2008 WL 719237 (S.D.N.Y. Mar. 17, 2008); *Hunter v. McLaughlin*, No. 04-CV-4058, 2008 WL 482848 at *4 (S.D.N.Y. Feb. 21, 2008) (considering the fact that *Louree* was "decided well after the Appellate Division denied [p]etitioner's claim" in concluding that the *Lee* factors weighed in favor of adhering to the state's procedural rule). Neither of these cases, however, dealt with the specific claim at issue in both this case and *Louree* (i.e. the failure to inform a defendant of mandatory PRS at his plea allocation). *See Robles*, 2008 WL 627509, at *6 (considering an ineffective assistance of counsel claim); *Hunter*, 2008 WL 482848, at *1 (considering a claim that a plea was invalid because petitioner was denied the right to represent himself). Two of the *Lee* factors (which the Second Circuit described as "guideposts"), therefore, counsel against relying on the state procedural bar here: the state courts do not currently demand "compliance with rule . . . in the specific circumstances presented," and it is, therefore, not true that "perfect compliance with the rule would serve a legitimate government interest." *Cotto*, 331 F.3d at 239 (summarizing the Supreme Court's holding in *Lee*, 534 U.S. at 381-85). However, while caselaw on the retroactivity of *Louree* is sparse, that which exists suggests that New York courts would apply *Louree* retroactively, and describe the holding in *Louree* without caveat. *See People v. Pagan*, 843 N.Y.S.2d 101, 102 (App. Div. 2007) (applying *Louree* retroactively); *People v. Minter*, 838 N.Y.S.2d 764, 765 (App. Div. 2007) (same); *Li v. LeClaire*, 16 Misc.3d 1124(A), at *1 (N.Y. Sup. Ct. 2007) (noting that the petitioner could pursue the remedy

9

discussed in *Catu*, with guidance from *Louree*, despite petitioner's plea pre-dating both decisions); *see also People v. Williams*, 925 N.E.2d 878, 882 (N.Y. 2010) ("[A] *Catu* error may be raised on direct appeal even if a defendant did not preserve the issue by moving to withdraw the plea prior to sentencing . . . ."); *People v. Singh*, No. 4846/2001, 2010 WL 2471454, at *1 (N.Y. Sup. Ct. May 17, 2010) (same).

Given the state of the law, there are serious questions about whether the procedural grounds on which the Appellate Division relied are adequate. The Court need not decide the question, however, because Petitioner's claim fails on the merits.[5]

### 2. Merits

Even if Petitioner's claim clears the procedural hurdle, it still fails on the merits, notwithstanding the New York Court of Appeal's decision in *Catu*.

First, New York courts have indicated that *Catu* does not have retroactive effect. *See People v. Odom*, 880 N.Y.S.2d 58, 59 (App. Div. 2009) (declining the "invitation to retroactively apply *Catu* to recidivist sentencing proceedings"); *People v. Butler*, 24 Misc.3d 1225(A), at *4 (N.Y. Sup. Ct. 2009) (noting the First Department's "disinclin[ation] to retroactively apply the *Catu* rule to recidivist sentencing proceedings" (internal citation omitted)); *People v. Menjivar*, 9 Misc.3d 1108(A), at *2-3 (N.Y. Sup. Ct. 2005) ("[T]he new rule enunciated in *Catu* . . . does not apply retroactively . . . ."); *see also Larweth v. Conway*, 493 F. Supp. 2d 662, 665 n.1 (W.D.N.Y. 2007) (noting the lack of caselaw regarding the retroactivity of *Catu*, and citing *Meijivar* for the

---

[5] To the extent that the procedural bar is an independent and adequate basis to reject Plaintiff's challenge to his plea, the Court agrees with Magistrate Judge Yanthis that Plaintiff has failed to demonstrate cause for, or actual prejudice from, the procedural default. (R&R 6.)

proposition that *Catu* does not apply retroactively). *But see Minter*, 838 N.Y.S.2d at 765 (suggesting that *Catu* could be applied retroactively); *Li*, 16 Misc.3d 1124(A), at *1 (same).

Second, and more importantly, Petitioner lacks any claim that he was denied his *federal* rights. A district court may grant a petition for habeas corpus if the petitioner's custody violates, not state law, but the Constitution or laws of the United States "as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). As noted, this requires a habeas petitioner to establish that "the state court 'unreasonably' applied law as established by the Supreme Court in ruling on petitioner's claim, or made a decision that was 'contrary to' it." *Cousin*, 511 F.3d at 337. There can be no unreasonable application of clearly established federal law as determined by the Supreme Court where there is no decision on the issue by the Supreme Court. *See Carey v. Musladin*, 549 U.S. 70, 76-77 (2006) (noting that the state court could not unreasonably apply clearly established law if the Supreme court has never addressed the specific issue); *Hines v. Miller*, 318 F.3d 157, 164 (2d Cir. 2003) (same).

As applied to this case, then, the question is whether Petitioner has a valid claim, under § 2254(d)(1), that his plea was contrary to Supreme Court authority. *See Marshall v. Lonberger*, 459 U.S. 422, 431 (1983) ("[T]he governing standard as to whether a plea of guilty is voluntary for purposes of the [F]ederal Constitution is a question of federal law, and not a question of fact subject to the requirements of 28 U.S.C. § 2254(d)." (internal citations omitted)).[6]

---

[6] This question is distinct from the one decided by the Second Circuit in *Earley v. Murray*, 462 F.3d 147 (2d Cir. 2006). In that case, the Second Circuit determined that clearly established Supreme Court precedent established that "the only valid terms of a defendant's sentence are the terms imposed by the judge." *Id.* at 149; *see also Scott v. Fischer*, No. 09-CV-1451, slip op. at 12 (2d Cir. Aug. 2, 2010) (reaffirming and describing the holding of *Earley*). In this case, the PRS was imposed by the sentencing judge. (Sentencing Tr. 14.) The question before the Court here, is whether Petitioner's plea, and not his sentence, was contrary to clearly established federal law, and *Earley* does not definitively answer that question.

"Unfortunately [for Petitioner], as indicated by several other district courts in this Circuit, there is no clearly established Supreme Court precedent that requires a state court judge to advise a defendant of mandatory PRS before accepting a guilty plea." *Potter v. Green*, No. 04-CV-1343, 2009 WL 2242342, at *6 (E.D.N.Y. July 24, 2009) (collecting cases); *see also Jenkins v. Farrell*, No 07-CV-6937, 2009 WL 1616008, at *9 (S.D.N.Y. June 9, 2009) (concluding that failure to advise petitioner of required post-release supervision was not contrary to any Supreme Court decision); *Sanchez v. Keller*, No. 06-CV-3370, 2007 WL 4927791, at *7 (S.D.N.Y. Dec. 4, 2007) ("[T]here is no clearly established Supreme Court precedent that a defendant must be advised of mandatory post-release supervision prior to entering a guilty plea."), *adopted by* 2008 WL 461593 (S.D.N.Y. Feb. 15, 2008); *Menjivar v. Sears*, No. 06-CV-2854, 2007 WL 2274892, at *3 (E.D.N.Y. Aug. 7, 2007) ("Though the New York Court of Appeals has held that post-release supervision is the sort of 'direct consequence' a defendant must be advised of prior to pleading guilty, the United States Supreme Court has not reached the same conclusion." (internal citation omitted)); *Kazmirski v. Poole*, No. 04-CV-89, 2005 WL 3262973, at *1 (N.D.N.Y. Dec. 1, 2005) ("Petitioner's reliance on *Catu* is inapposite here. . . . *Catu* represents the judgment of New York's highest court, which is neither binding precedent in th[e Second] Circuit, nor 'clearly established Federal law.'" (quoting 28 U.S.C. § 2254)); *Shabazz v. Perlman*, No. 04-CV-4355, 2005 WL 2105533, at *6 (S.D.N.Y. Sept. 1, 2005) (holding that "*Catu* is not controlling in this federal habeas proceeding because it is state law," and noting the lack of "any Supreme Court case that requires a state court judge to advise a defendant of mandatory post-release supervision before accepting a guilty plea").

The Second Circuit has not squarely addressed this question, but it has noted (very recently) that while the Supreme Court has held that a guilty plea is voluntary and knowing if the defendant is advised of its direct consequences, *see Brady v. United States*, 397 U.S. 742, 755 (1970), the Supreme Court has "not defined which consequences of a guilty plea are direct and which are collateral." *Pignataro v. Poole*, No. 09-1396-pr, 2010 WL 2501009, at *2 (2d Cir. June 18, 2010). The absence of such a decision, the Second Circuit has suggested, is fatal to a habeas claim that a plea is unconstitutionally involuntary because the defendant was not advised of post-release supervision. *See id.* at *3 ("[I]n the absence of a Supreme Court ruling on the issue of whether PRS (or a similar state-imposed post-imprisonment term of supervision, such as parole) could be a direct consequence of a guilty plea, the trial court's acceptance of [a]ppellant's guilty plea was not contrary to or an unreasonable application of federal law.").[7]

The Second Circuit's suggestion finds support from the Seventh Circuit. In *Lockhart v. Chandler*, 446 F.3d 721 (7th Cir. 2006), the Seventh Circuit rejected a habeas petition premised on a similar challenge to a guilty plea as the one here, involving an Illinois statute requiring post-release supervision. 446 F.3d at 722, 725. In affirming the denial of the petition, the *Lockhart* court observed that "[t]here is no Supreme Court precedent for the proposition that a defendant must be advised of a term of [mandatory post-sentence supervision] at the time he attempts to

---

[7] In *Pignataro*, the habeas petitioner's principal claim was that his appellate counsel was constitutionally ineffective in failing to challenge his guilty plea, during which the petitioner was not advised, by counsel or the trial court, about the five-year mandatory PRS. 2010 WL 2501009, at *2. Because the trial court did not impose the PRS at sentencing, and because a combination of caselaw and statutory authority allowed for re-sentencing that would not include a PRS component, the Second Circuit held that there was no prejudice from any allegedly ineffective assistance of appellate counsel, because petitioner was no worse off than he was as a result of the plea bargain. *Id.* at *2-3. Thus, the above-quoted statement in *Pignataro* about the absence of Supreme Court precedent requiring criminal defendants to be advised of post-release supervision is arguably *dicta*.

13

enter a plea of guilty." *Id.* at 724 ("[T]he [Supreme] Court has expressly declined to decide such an issue in the very similar context of parole."); *see also Hill v. Lockhart*, 474 U.S. 52, 56 (1985) (noting that the Supreme Court had never recognized a constitutional right requiring "the State to furnish a defendant with information about parole eligibility in order for the defendant's plea of guilty to be voluntary, and indeed such a constitutional requirement would be inconsistent with the current rules of procedure governing the entry of guilty pleas in the federal courts"); *Lane v. Williams,* 455 U.S. 624, 630 n.9 (1982) (declining to "decide whether, to establish . . . a constitutional violation, respondents must claim that they in fact did not know of the parole requirement at the time they pleaded guilty or that they would not have pleaded guilty had they known of this consequence"). Thus, even though the petitioner in *Lockhart* could point to Illinois and Seventh Circuit authority that suggested a guilty plea would be infirm from a failure to advise the pleading defendant of post-release supervision, the Seventh Circuit held that absence of any Supreme Court authority presented an "impossible hurdle" for the petitioner. *Lockhart*, 446 F.3d at 723-24; *see also id.* at 724-25 (noting that though the Seventh Circuit had "cited to cases from the Supreme Court in those older cases, that action simply cannot be taken to mean the Supreme Court had determined that a right had been clearly established," because when reviewing a habeas petition, courts "must consider the actual language and analysis contained in Supreme Court cases to determine whether a right has been clearly established," which language and analysis could not support a holding "that an individual like Lockhart had a clearly established right to be informed of the [mandatory supervised release]").

Accordingly, Petitioner cannot establish that there was an unreasonable application of federal law that would substantiate his claim that his plea was unlawful.

14

### III. Conclusion

For the reasons stated above, the Court finds that Petitioner's claims do not warrant habeas relief. Accordingly, it is

ORDERED that the Report and Recommendation dated January 23, 2009 is ADOPTED where consistent with this Order. It is further

ORDERED that Petitioner's writ of habeas corpus is DISMISSED. It is further

ORDERED that because petitioner has not made a substantial showing of the denial of a constitutional right, a certificate of appealability will not issue, *see* 28 U.S.C. § 2253(c)(2); *Lucidore v. N.Y. State Div. Of Parole*, 209 F.3d 107, 111-12 (2d Cir. 2000), and the Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this Order would not be taken in good faith. It is further

ORDERED that the Clerk of the Court is respectfully directed to enter a judgment in favor of Respondent and to close this case.

SO ORDERED.

Dated: August 12, 2010
    White Plains, New York

KENNETH M. KARAS
UNITED STATES DISTRICT JUDGE

15

Service List (by Mail):

Quaheri Redcross
#02-A-6186
Mid-Orange Correctional Facility
900 Kings Highway
Warwick, NY  10990

Andrew R. Kass, Esq.
Orange County Attorney
County Government Center
225 Main Street
Goshen, NY  10924

Copy To:

Hon. George A. Yanthis
United States Magistrate Judge